UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOZEF KLAPER,

                Plaintiff,            **REPORT AND RECOMMENDATION**
                                             **10 CV 1811 (NGG)(LB)**

      - against -

CYPRESS HILLS CEMETERY and UNITED
SERVICE WORKERS UNION LOCAL 74,

                Defendants.
------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Jozef Klaper brings this employment discrimination action against Cypress Hills Cemetery ("CHC") and United Service Workers Union Local 74 ("Local 74") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); 42 U.S.C. § 1985; the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"); the New York City Human Rights Law § 8-107, *et seq.* ("NYCHRL"); and other state and common law causes of action. Plaintiff alleges that defendants discriminated against him based on his age, Polish national origin, and disability of alcoholism. Plaintiff now moves to amend his complaint. Defendant CHC consents to the amendment, but defendant Local 74 opposes his motion to amend and moves to dismiss the proposed amended complaint. The Honorable Nicholas G. Garaufis referred these motions to me for a Report and Recommendation in accordance with 28 U.S.C § 636(b). For the following reasons, it is respectfully recommended that plaintiff's motion to amend should be granted and defendant Local 74's motion to dismiss the amended complaint should also be granted.[1]

---

[1] Local 74's request for oral argument is denied as unnecessary. (Docket entry 45.)

# BACKGROUND

Plaintiff Jozef Klaper, a 62-year-old man of Polish descent, was employed by defendant Cypress Hills Cemetery as a tractor driver and maintenance worker from May 9, 2005 to July 2, 2008. (Docket entry 36-1, Am. Compl. ¶¶ 14-15, 17-18.)[2] Plaintiff alleges that CHC immediately became a hostile work environment where he faced "daily discriminatory conduct" by CHC employees. Plaintiff's amended complaint also reflects his personal downward spiral as the alleged "constant mental abuse" at CHC led him deeper into depression and heavy drinking. (Id. ¶¶ 54-55.) Plaintiff eventually lost his job and sought treatment for alcohol abuse. (Id. ¶¶ 60, 72-73.) Plaintiff claims that his union, defendant Local 74, knew about CHC's conduct and discriminated against him by refusing to represent him in a grievance procedure. Plaintiff further alleges that Local 74 conspired with CHC to terminate him and replace him with a younger, non-Polish, and non-disabled worker.

## I. Plaintiff's Allegations of Discrimination at CHC

Plaintiff's amended complaint alleges that CHC employees and supervisors mocked him and discriminated against him by calling him by the name "Eddie Mouser," an older former CHC employee who is deceased (Am. Compl. ¶¶ 23-35), as well as "stary chuj," a Polish phrase for "old dick" or "old cock" (id. ¶¶ 38, 40). Plaintiff also alleges a number of isolated incidents of harassment and discrimination by CHC employees. (Id. ¶¶ 39, 41-43.) Plaintiff states that this treatment at work caused him to hit a "breaking point" and go on a drinking streak in June of 2008. (Id. ¶¶ 56-57.) On June 30, 2008, plaintiff called CHC and left a message stating that he was sick and would not return to work until July 2, 2008. (Id. ¶ 58.) When plaintiff arrived at work on that date, he was told he was no longer employed at CHC and should go home. (Id. ¶ 60.) Plaintiff repeatedly returned to work to ask for his job back before seeking help from defendant Local 74. (Id. ¶¶ 61-64.) Plaintiff claims that CHC created various schemes to justify firing him and replacing him with younger, non-Polish, and non-disabled workers, including that CHC and Local 74 conspired to fabricate two "Employee

---

[2] I refer to plaintiff's proposed amended complaint as the "Amended Complaint." (Docket entry 36-1.)

Warning Slips" to justify his termination, which were submitted to the New York State Human Rights Division in response to plaintiff's complaint. (Id. ¶¶ 112-24.)

## II. Plaintiff's Allegations Against Local 74

Plaintiff claims that Local 74 did not adequately represent him when he sought the union's help. Following his termination in July 2008, plaintiff visited the union's office at least three times and met with Local 74 Contract Administrator Mike Herron and Polish-speaking union employee Anna Kubas. (Am. Compl. ¶ 64.) Local 74 then arranged a meeting with plaintiff, union employees Mr. Herron and Ms. Kubas, and two CHC supervisors, Anthony Russo, the Supervisor of Field Operations, and Mario Gil, CHC's vice president. (Id. ¶¶ 66-67.) At that August 2, 2008 meeting, plaintiff was told that he had to sign a "final chance stipulation" to keep his job, and that he could return to work after a three-month suspension and checking himself into an alcohol rehabilitation program.[3] (Id. ¶¶ 68-70.) Plaintiff signed the stipulation but claims that Ms. Kubas did not translate the document from English to Polish or fully explain the document. (Id. ¶¶ 70-71.)

Plaintiff checked himself into St. Mark's Place Institute for Mental Health for alcohol abuse treatment on August 4, 2008. (Am. Compl. ¶¶ 72-73.) On October 2, 2008, plaintiff's psychotherapist determined that plaintiff was not ready to return to work; the following week the psychotherapist left two telephone messages with CHC regarding plaintiff's continuing treatment and possible accommodations for his return to work. (Id. ¶¶ 81-83.) The director of the institute, Dr. Roman Pabis,

---

[3] The stipulation states:
    I, Jozef Klaper, with the advice of my union representative, agree to the following stipulation's [sic] relating to the complaint filed on 7/02/2008 by my Superintendent, Anthony Russo.
    1.) Jozef will be suspended for three months with a scheduled return to work date of October 1st, 2008. Cypress Hills Cemetery will continue paying for his benefits during the three month period of suspension.
    2.) Jozef will lose seniority and go to the bottom of the seniority list.
    3.) Jozef will enter an Alcohol Rehabilitation Program, during his suspension, and show proof of successfully completing the Alcohol Rehabilitation Program.
    4.) Jozef agrees to release his records, to Cypress Hills Cemetery, upon approved release from the Alcohol Rehabilitation Program.
    5.) This is a final chance stipulation (subject to termination following any new occurrence in the violation of our rules and regulations).
(Docket entry 41-1, Declaration of Tomasz J. Piotrowski in Support of Plaintiff's Motion ("Piotrowski Decl."), Ex. 4, "Final Stip."; docket entry 42-2, Declaration of Joyce K. Mele ("Mele Decl."), Ex. A.)

3

also faxed a letter, directed to the attention of Mr. Russo, to both CHC and Local 74. (Id. ¶ 85; id., Ex. C, "Pabis ltr.") Plaintiff claims that neither CHC nor Local 74 responded to the Institute's communications. (Am. Compl. ¶¶ 83-84, 88.) On October 9, 2008, plaintiff returned to work and was told he was fired. (Id. ¶ 93.) Upon information and belief, plaintiff claims that he was replaced with a younger, non-Polish, and non-disabled worker. (Id. ¶ 94.)

Local 74 did not object to plaintiff's termination (id. ¶¶ 95-96), and plaintiff claims that the union conspired with CHC to terminate and replace him. He claims that Dr. Pabis left at least two phone messages requesting the union's help in getting plaintiff's job back, but that Local 74 did not respond. (Id. ¶¶ 100-01.) Plaintiff also claims he went to Local 74's office on three occasions to request his job back, but that Mr. Herron and Ms. Kubas told him that nothing could be done and refused to file a grievance on his behalf. (Id. ¶¶ 102-05.) When plaintiff told the union representatives about the harassment he experienced at CHC, including the names he was called, Mr. Herron told him that "everyone has some kind of nickname." (Id. ¶¶ 106-07.) Plaintiff alleges that Local 74 intentionally discriminated against him based on his disability, and that Mr. Herron's statement regarding nicknames "reflects his own prejudice against older Polish Plaintiff." (Id. ¶¶ 108-09.)

### III. Plaintiff's Administrative Complaints

On November 3, 2008, plaintiff filed a discrimination charge based on age, disability, and national origin with the New York State Division of Human Rights (DHR), which was jointly filed with the Equal Employment Opportunity Commission (EEOC). (Am. Compl. ¶¶ 8, 10.) The parties dispute whether Local 74 was investigated as a respondent to the charge. Plaintiff claims that his charge was filed against both CHC and Local 74. (Id. ¶ 8.) On his DHR complaint form, plaintiff listed "Union President Local 74 Mike Herron" as a respondent and wrote the union's phone number. (Piotrowski Decl., Ex. 1, "DHR Compl." 4.)[4] On February 22, 2010, the DHR dismissed plaintiff's

---

[4] The Court references ECF page numbers. When both parties have filed the same document, the Court shall note both docket entries but refer to the ECF page numbers in plaintiff's exhibits.

4

complaint and issued a "Final Investigation Report and Basis of Determination" (id., Ex. 2, "DHR Report") and "Determination and Order after Investigation" (id., Ex. 3, "DHR Order"; docket entry 42-3, Mele Decl., Ex. B). (Am. Compl. ¶ 9.) The DHR Report and Order list CHC as the only respondent (DHR Report 9; DHR Order 14), but the DHR Report also states that the union's attorneys wrote to the DHR and "requested that all further correspondence be directed to them on behalf of Local 74 concerning the Complainant's case and that they be advised on the exact status of the case and whether any further action on local 74's part was necessary." (DHR Report 12.)

The EEOC adopted the DHR's findings on July 15, 2010 and issued plaintiff a right-to-sue letter, which was copied to CHC. (Am. Compl. ¶ 11; id., Ex. B, "EEOC right-to-sue ltr.") On September 27, 2010, EEOC investigator Holly Woodyard sent plaintiff's counsel a letter stating that,

> due to a clerical error, the United Service Workers Union Local 74 was not cc'd on the Dismissal and Notice of Rights letter [but] should have been included because it was a part of the charge. [sic] Therefore, the Dismissal and Notice of Rights letter that was issued on July 15, 2010, equally applies to United Service Workers Union Local 74 as well as Cypress Hills Cemetery.

(id. ¶ 12; id., Ex. B, "EEOC Suppl. ltr.")

## PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* on April 20, 2010 and was granted *in forma pauperis* status on April 28, 2010. (Docket entries 1, 3.) Defendant CHC answered plaintiff's original complaint (docket entry 13), and defendant Local 74 moved to dismiss the complaint (docket entries 15-18). Plaintiff retained counsel, who filed a notice of appearance on September 17, 2010 (docket entry 22) and subsequently filed separate amended complaints against defendants CHC and Local 74 (docket entries 26, 28-32). Following an October 26, 2010 conference, the Court ordered plaintiff to submit a single proposed amended complaint, and Local 74 withdrew its pending motion to dismiss without prejudice. (Order, Oct. 26, 2010.) Plaintiff moved for leave to amend his complaint on November 3, 2010. (Docket entries 34-36.) By letter dated December 13, 2010, defendant CHC states

that it does not oppose plaintiff's motion to amend his complaint. (Docket entry 40.) However, defendant Local 74 opposes plaintiff's motion to amend and moves to dismiss the proposed amended complaint. (Docket entries 42-44.) Plaintiff's motion to amend and Local 74's motion to dismiss were referred to me for a Report and Recommendation under 28 U.S.C. § 626(b). (Docket entry 46.)

## DISCUSSION

Plaintiff moves to amend his complaint pursuant to Fed. R. Civ. P. 15(a). Under Rule 15(a), when more than twenty-one days have passed since the complaint and responses were served, as is the case here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The Court may deny a motion to amend for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178 (1962)). While defendant CHC consents to plaintiff's filing of the amended complaint, defendant Local 74 opposes plaintiff's motion on grounds of futility, and alternatively seeks to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). "The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss -- namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." Crippen v. Town of Hempstead, No. 07-CV-3478 (JFB)(ARL), 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009).

For the reasons stated below, the Court finds that plaintiff's proposed amended complaint does not withstand defendant Local 74's motion to dismiss. However, while it would be appropriate for the Court to deny plaintiff's motion to amend on that ground, a "trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed."

6

Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md., 715 F. Supp. 578, 581 (S.D.N.Y. 1989); see also Smugglers Notch Homeowners'Ass'n, Inc. v. Smugglers' Notch Mgmt. Co., 414 Fed. Appx. 372, 377 (2d Cir. 2011) (noting that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint," but that leave to amend is rightfully denied when plaintiff's claims would not survive dismissal) (internal quotations omitted); Camp Summit of Summitville, Inc. v. Visinski, No. 06-CV-4994 (CM)(GAY), 2007 WL 1152894, at *16 (S.D.N.Y. Apr. 16, 2007) ("district courts have discretion to deny leave to amend if an amendment would be futile.").

In this case, CHC consents to the amendment, and Local 74's motion to dismiss addresses the amended complaint. It is therefore an appropriate exercise of discretion to grant plaintiff's motion to amend and decide Local 74's motion to dismiss with respect to plaintiff's amended complaint. See Morse/Diesel, Inc., 715 F. Supp. at 581.

**I. Rule 12(b)(6) Standard of Law for Failure to State a Claim**

"To survive a motion to dismiss [pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted)). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002)); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," id., or "speculative," Twombly, 550 U.S. at 555; he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556)). If a plaintiff does not "nudge [his] claims across the line from conceivable to *plausible*, [the] complaint must be dismissed." Twombly, 550 U.S. at 569 (emphasis added).

In deciding a motion to dismiss, the Court may consider, in addition to the complaint, documents attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). A Court may take judicial notice of public records of administrative proceedings, including records of the DHR and EEOC. Colquitt v. Xerox Corp., No. 05-CV-6405, 2010 WL 3943734, at *1 (W.D.N.Y. Oct. 7, 2010). Thus, the Court shall consider the administrative records submitted by the parties, the documents attached to plaintiff's amended complaint, and the copy of the final chance stipulation referenced in plaintiff's amended complaint without converting the instant motion to one for summary judgment.[5]

## II. Application of Rule 12(b)(6) Standard to Plaintiff's Claims

**A. Plaintiff's Discrimination Claims under Title VII, the ADA, and the ADEA**

Under Title VII, it is unlawful for a labor organization "to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1); Yerdon v. Henry, 91 F.3d 370, 375 (2d Cir. 1996). The ADA prohibits employment discrimination by labor organizations based on an individual's disability, 42 U.S.C. §§ 12111(2), 12112; and the ADEA

---

[5] Plaintiff attaches three documents to his amended complaint: the July 15, 2010 EEOC right-to-sue letter; the September 27, 2010 supplemental letter from the EEOC; and the October 6, 2008 letter to the attention of Mr. Russo from Dr. Pabis. (Am. Compl., Ex. A-C.) Defendant attaches two additional documents to its motion to dismiss: the "final chance stipulation" referenced in ¶¶ 68-71 of plaintiff's amended complaint, and the February 22, 2010 DHR Order. (Mele Decl., Ex. A-B.) Plaintiff's opposition to defendant's motion attaches his DHR complaint form, the DHR Report, the DHR Order, an October 9, 2008 letter from CHC terminating plaintiff's employment, and the final chance stipulation. (Piotrowski Decl., Ex. 1-4.) As plaintiff does not reference the October 8, 2008 termination letter in his amended complaint, and he does not allege that he possessed or knew of the letter at the time he filed his complaint, the Court does not consider the letter in evaluating the parties' motions.

8

prohibits labor organizations from discriminating against individuals based on their age, 29 U.S.C. § 623(c)(1).

Title VII, ADA, and ADEA claims against labor organizations are analyzed differently than discrimination claims against employers. To establish discrimination claims by a union member against his or her union, the plaintiff must first show that the union breached its duty of fair representation ("DFR") to the union member.[6] Oparaji v. United Federation of Teachers, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006) (Title VII); Parker v. Metrop. Transp. Auth., 97 F. Supp. 2d 437, 448 (S.D.N.Y. 2000) (ADA and ADEA). Once the plaintiff establishes a breach of the duty of fair representation, he must then demonstrate that the adverse action was motivated by unlawful discrimination.[7] Oparaji, 418 F. Supp. 2d at 146 (Title VII); Nweke, 25 F. Supp. 2d at 221 (Title VII and ADA); Jourdain v. Service Employees Intern. Union Local 1199, No. 09 Civ.1942(AKH), 2010 WL 3069965, at *10 (S.D.N.Y. Jul. 28, 2010) (Title VII and ADEA).

Defendant Local 74 argues that even if plaintiff's motion to amend is granted, his Title VII, ADA, and ADEA claims should be dismissed because (1) plaintiff failed to exhaust his administrative remedies, (2) plaintiff's complaint is time-barred, and (3) plaintiff fails to state a claim for

---

[6] Although courts in this circuit have developed a clear line of cases analyzing discrimination claims against unions pursuant to the DFR standard, plaintiff asserts an alternative theory that defendant Local 74 discriminated against him by ratifying or acquiescing to CHC's discriminatory practices. (Docket entry 41, Pl.'s Opp'n 17-20.) Even where a plaintiff's DFR and "ratification" allegations are analyzed separately, "[i]t has been held that in order to establish a Title VII claim *concerning representation by a union of its members' interests*, it is axiomatic that…there must first be a finding that the [union] breached its duty of fair representation." Nweke v. Prudential Ins. Co. of America, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998) (emphasis added); see also Ayazi v. United Federation of Teachers, Local 2, No. 99 CV 8222(CLP), 2011 WL 888053, at *15 (E.D.N.Y. Mar. 14, 2011) (noting that "[t]acit union acquiescence in an employer's discriminatory practices is sufficient to render it liable" in the context of analyzing that plaintiff's claim under the DFR standard). Here, plaintiff's amended complaint alleges that the union *failed to represent him* following his termination. Further, plaintiff fails to allege facts that support his acquiescence theory, stating only that the union was aware of plaintiff's disability and did not grieve CHC's decision to terminate him. These statements are insufficient to sustain plaintiff's claim that the union acquiesced in the employer's alleged discriminatory actions here.

[7] When analyzing duty of fair representation claims in discrimination suits against unions, some courts in this circuit have applied the three-step test articulated in Bugg v. International Union of Allied Indus. Workers of America, Local 507 AFL-CIO, 674 F.2d 595 (7th Cir.1982), requiring plaintiff to show: (1) that the employer violated the collective bargaining agreement with respect to plaintiff, (2) that the union breached its duty of fair representation by failing to challenge the employer's violation, and (3) that the union's actions were motivated by discriminatory animus. Ayazi, 2011 WL 888053, at *12 (reviewing two common tests for DFR analysis). Other courts have questioned the Bugg analysis and applied only the final two elements of the Bugg test. Id. As neither party in this case urges the Court to apply the more stringent three-step Bugg test, and the Court finds that plaintiff's claims fail under the more lenient analysis, the Court applies the two-step test.

discrimination.[8]

## 1. Exhaustion of Administrative Remedies & Timeliness

To bring a timely complaint under Title VII, the ADA, and the ADEA, an aggrieved employee must file a charge with the EEOC within 180 days of the alleged discriminatory act, or file a charge with an equivalent state or city agency, such as the New York State Division of Human Rights, within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a) (incorporating the timeliness requirements of Title VII in regards to ADA claims); 29 U.S.C. §§ 626(d), 633(b); Cherry v. City of New York, 381 Fed. Appx. 57, 58 (2d Cir. 2010) (Title VII, ADA, and ADEA). In addition, under Title VII and the ADA, an employee must file a lawsuit in federal court within 90 days after receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). No right-to-sue letter is required to file an ADEA claim; "a complainant may exhaust the administrative process by withdrawing agency charges so long as the charge was pending with the EEOC for at least 60 days." McPherson v. New York City Dept. of Educ., 457 F.3d 211, 214-15 (2d Cir. 2006). However, if the employee receives a right-to-sue letter, the same 90-day limitation applies. 29 U.S.C. § 626(e); Guerra v. Jones, 421 Fed. Appx. 15, 17 (2d Cir. 2011). In the context of claims alleging that a union breached its duty of fair representation for discriminatory reasons under Title VII, the ADA, and the ADEA, the statute of limitations for those claims—rather than the shorter

---

[8] Local 74 alternatively argues that plaintiff's ADEA claims should be dismissed because plaintiff seeks only monetary damages, which are not available against a union under the ADEA. (Docket entry 43, Def.'s Mem. 30.) In reference to plaintiff's ADEA claims, his proposed amended complaint states that, "[a]s a result of the Union's discrimination, Plaintiff has been damaged in an amount to be determined at trial." (Am. Compl. ¶ 197.) His plea for relief seeks only damages, costs, attorney's fees, and "such other and further relief as this Court may deem just and proper." (Id. at Wherefore Clause ¶¶ A-F.)

Courts in the Second Circuit have repeatedly held that "the ADEA does not provide for the recovery of monetary damages against a labor organization, leaving plaintiffs only with the possibility of injunctive relief in the event [the defendant] is found liable under the ADEA." Holmes v. Air Line Pilots Ass'n, Intern., 745 F. Supp. 2d 176, 205 (E.D.N.Y. 2010).

> Damages are an essential element of an ADEA claim, and in the absence of an available remedy, [plaintiffs'] ADEA claim must be dismissed…. Plaintiffs' general requests for 'such other and further relief as to this Court may seem just and proper' and for attorney's fees and costs do nothing to change the foregoing analysis.

Id. at 205-06 (internal citations omitted). Plaintiff only seeks damages under his ADEA claim. Therefore, he fails to state a claim to relief that is plausible on its face. Although the substance of plaintiff's discrimination claims is discussed in this Report, plaintiff's claim should be dismissed in the alternative on this ground.

six-month statute of limitations for duty of fair representation claims—controls. Lee v. ITT Standard, 268 F. Supp. 2d 315, 335 (W.D.N.Y. 2002); Nweke, 25 F. Supp. 2d at 219.

Defendant argues that plaintiff failed to exhaust his administrative remedies because he (1) did not name Local 74 as a respondent in his charge with the DHR and EEOC,[9] and (2) did not receive his right-to-sue letter prior to commencing this suit. (Def.'s Mem. 20-23; docket entry 44, Def.'s Reply 4-7.) Defendant also argues, incorrectly, that even if plaintiff did properly charge Local 74, his claims are time-barred pursuant to the six-month statute of limitations that applies to DFR actions outside of the employment discrimination context. (Def.'s Mem. 23-24.) Plaintiff claims that his charge was timely filed with the DHR against both defendants on November 3, 2008, within the 300-day statute of limitations period; he also alleges that his receipt of a right-to-sue letter after filing this suit, as supplemented by the EEOC investigator's letter, is sufficient to demonstrate proper exhaustion against Local 74. (Pl.'s Opp'n 5-11.) Because the Court finds that plaintiff's amended complaint fails to state a claim upon which relief can be granted on other grounds, the Court will assume, without deciding, that plaintiff timely exhausted his administrative remedies against Local 74.

**2. Failure to State a Claim for Breach of the Duty of Fair Representation**

The "duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)." White v. White Rose Food, 237 F.3d 174, 179 n.3 (2d Cir. 2001). This obligation "requires a union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Agosto v. Correctional Officers Benevolent Association, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000) (internal quotation omitted). "A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Propst v.

---

[9] Defendant argues that plaintiff never filed a charge against Local 74 because the union is neither named as a respondent in the caption of the DHR Order nor mentioned in the original EEOC right-to-sue letter. (Def.'s Mem. 20.) Defendant also argues that the September 27, 2010 letter from the EEOC investigator "carries no legal weight or authority and should be disregarded by this Court." (Def.'s Mem. 22.)

Association of Flight Attendants, 546 F. Supp. 2d 14, 20 (E.D.N.Y. 2008) (citing Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998)).  Plaintiff must show that the union's actions were discriminatory, arbitrary, or in bad faith, and that there is a causal connection between the union's acts and his injuries.  Sim v. New York Mailers' Union Number 6, 166 F.3d 465, 472 (2d Cir. 1999).

The union acts arbitrarily "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  Air Line Pilots Ass'n, Intern. v. O'Neill, 499 U.S. 65, 67 (1991) (internal quotation omitted).  To demonstrate bad faith, plaintiff must show that the union's actions constitute "fraud, deceitful action or dishonest conduct."  Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., No. 05-CV-2666(JBW), 2005 WL 1661093, at *7 (E.D.N.Y. July 14, 2005) (citing Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. v. Lockridge, 403 U.S. 274, 299 (1971)).  In the context of claims that a union failed to file a grievance on a member's behalf, a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion."  Air Line Pilots Ass'n, Intern., 499 U.S. at 191.  However, "the union has the discretion to refuse to pursue claims which it believes are without merit."  Ayazi, 2011 WL 888053, at *15 (internal quotation omitted).  It is clear that "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance."  Smith v. New Venture Gear, Inc., 319 Fed. Appx. 52, 57-58 (2d Cir. 2009) (quoting Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994)).  A court's review of a union's representation must therefore be "highly deferential," recognizing the union's "broad range of discretion in carrying out its role as representative."  Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005).

"To survive a Rule 12(b)(6) motion, a duty of fair representation plaintiff must at least allege that the Union engaged in arbitrary, discriminatory or bad faith conduct *and offer some factual support*

12

*for such claims*." Goodman v. Port Auth. of N.Y. & N.J., No. 10 Civ. 8352, 2011 WL 3423800, at *6 (S.D.N.Y. Aug. 4, 2011) (emphasis added). Here, plaintiff asserts the following facts against Local 74: that the union neither translated the English-language "final chance stipulation" into Polish nor told plaintiff that the document was a "final chance stipulation" in which he was agreeing to give up his seniority (Am. Compl. ¶ 70); that the union failed to respond to a faxed letter addressed to his CHC supervisor (id. ¶ 88); that the union did not respond to Dr. Pabis' voicemails (id. ¶ 101); and that the union knew plaintiff would be fired but did not act to prevent his termination (id. ¶¶ 95-96). Plaintiff also states that "[d]efendants had fabricated false employee warning slips" as part of a conspiracy to "terminate Plaintiff and replace him with younger, non-Polish and non-disabled worker [sic]," but no facts are alleged regarding the union's role in creating the alleged false documents. (Id. ¶¶ 201, 122.)

Plaintiff concedes that the union initially took a number of steps to represent him. Local 74 met with him about his concerns and told him it would make a decision about his complaint. (Id. ¶ 65.) He states that the union arranged a meeting between plaintiff, his union representatives, and his employer, and that the union provided a Polish-language interpreter for the meeting. (Id. ¶¶ 66-67.) The union also assisted in executing a "final chance stipulation" that allowed plaintiff to seek treatment for his disability, maintain his employment benefits, and return to work after a three-month suspension. (Final Stip.) The record reflects that plaintiff did not comply with that final chance stipulation, and that his employer fired him when he returned to work a week after the stipulated "scheduled return to work date of October 1, 2008." (Id. ¶¶ 81-93.) At that point, two union representatives "simply told Plaintiff that nothing could be done and refused to file a grievance on his behalf." (Id. ¶ 105.) The DHR's "Determination and Order after Investigation" also describes the union's involvement, stating that "[i]n disciplinary actions and in the subsequent grievance process resulting in the last chance agreement the Complainant was provided with Polish translators" and that "the Complainant was fired

a second time for job abandonment and the union *could not* grieve that matter." (DHR Order 15) (emphasis added).

Accepting the facts alleged in plaintiff's amended complaint as true, plaintiff's claims that the union's actions were discriminatory are entirely conclusory. (Id. ¶¶ 99, 108, 123, 179, 180, 182, 186, 187, 189, 193, 194, 196.) Likewise, plaintiff's claim that Local 74 "acted with deliberate indifference, malice and intent to injure Plaintiff" is entirely conclusory. (Id. ¶¶ 181, 188, 195.) Plaintiff fails to state a plausible claim that Local 74's actions were "so far outside a wide range of reasonableness as to be irrational" rather than merely negligent or the result of the union's wide discretion to choose whether or not to file a grievance on plaintiff's behalf. Air Line Pilots Ass'n, Intern., 499 U.S. at 67.

However, even if the Court were to find that plaintiff's amended complaint states a plausible claim that the union breached its duty of fair representation and *caused* plaintiff's alleged injuries, plaintiff fails to state a claim that the union's actions were motivated by discriminatory animus. Plaintiff's single fact regarding this element of his claim against Local 74 is that, following plaintiff's second termination, union representative Mike Herron responded to plaintiff's statement that he was being called "Eddie Mouser" and "stary chuj" by telling him that "everyone has a nickname." (Id. ¶¶ 106-107.) Even though plaintiff maintains that Mr. Herron's comment "reflects his own prejudice against older Polish plaintiff" (id. ¶ 109), Herron's statement on one occasion is insufficient to establish a plausible claim that the union acted or failed to act out of discriminatory animus. Plaintiff alleges no other facts regarding the union's discriminatory intent or any differential treatment afforded to him because of his age, national origin, or alcoholism. Therefore, the Court finds that plaintiff's amended complaint fails to state a plausible claim against Local 74 under Title VII, the ADA, and the ADEA, and defendant's motion to dismiss these claims should be granted.

14

## B. Plaintiff's 42 U.S.C. § 1985 Claims

Plaintiff also brings a claim against Local 74 pursuant to 42 U.S.C. § 1985(3), which creates a cause of action where "two or more persons in any State or Territory conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim for a violation of § 1985(3), plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) a person is either injured in his person or property or deprived of any right or privilege of a United States citizen as a result. Moreover, a § 1985(3) violation must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

Chapman v. City of New York, No. 06–CV–3153 (ENV)(JMA), 2011 WL 1240001, at *12 (E.D.N.Y. Mar. 30, 2011) (citing United Broth. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).[10] "Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed." Brito v. Arthur, 403 Fed. Appx. 620, 621 (2d Cir. 2010) (internal citations omitted); see also Gorokhovsky v. City of New York, No. 10 Civ. 8848(LBS),

---

[10] While the Supreme Court has stated that the "class-based" protections of § 1985(3) may extend beyond race, it has not yet defined the boundaries of those protections. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993) ("Whatever may be the precise meaning of a 'class'… the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.") The Second Circuit has extended § 1985(3) protections beyond race-based claims, but the boundaries of those protections remain unsettled. See e.g., Hoffman v. Nassau County Police Dept., No. 06-CV-1947 (SJF)(AKT), 2008 WL 1926773, at *6 (E.D.N.Y. Apr. 30, 2008) ("The Second Circuit has extended the protections of § 1985(3) to people with mental disabilities."); Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc., 968 F.2d 286, 291 (2d Cir 1992) ("Several courts, including this one, have defined 'class-based animus' to include discrimination based on religion."); New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1359 (2d Cir. 1989) ("women may constitute a class for purposes of § 1985(3)"). However, even when courts in this circuit question or do not address whether a plaintiff belongs to a cognizable class, they analyze the other elements of the plaintiff's conspiracy claim. See e.g., Rzayeva v. United States, 492 F. Supp. 2d 60, 82 (D. Conn. 2007) ("Plaintiffs['] … allegations may be construed to state discrimination on the basis of national origin, a cognizable class for purposes of § 1985 claims. However, even if Plaintiffs belong to a cognizable class, they fail to allege any facts showing a connection between Defendants' alleged discriminatory animus and their alleged unconstitutional conduct."); DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 348 (S.D.N.Y. 2009) (analyzing plaintiff's claim as to the elements of conspiracy without discussing whether age or gender meet the class-based requirements of § 1985(3)); Platsky v. Kilpatrick, 806 F. Supp. 358, 362-63 (E.D.N.Y. 1992) ("even if political beliefs *did* make plaintiff a member of a protected class, consideration of the undisputed facts in this case reveals that plaintiff has failed to establish the requisite link between his class association and defendants' actions"). Therefore, regardless of whether plaintiff's national origin, disability, or age qualifies for protection under § 1985(3), the Court finds that plaintiff's amended complaint does not state a claim for conspiracy.

15

2011 WL 2019423, at *11–12 (S.D.N.Y. May 19, 2011) ("Although a conspiracy need not be shown by proof of an explicit agreement, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.")

Defendant moves to dismiss plaintiff's § 1985(3) claim for failure to allege facts that support a conspiracy or link defendant's alleged actions to discriminatory animus based on a protected class. (Def.'s Mem. 20-22; Def.'s Reply 8-9.) Plaintiff's proposed amended complaint states only that "the Cemetery, through its Supervisor of Field Operations, Mr. Anthony Russo and the Union-Local 74 through its Contract Administrator, Mr. Mike Herron and Union Shop Steward, Mr. James Confessore, conspired together to create false documents regarding Plaintiff," that "Defendants had fabricated false employee warning slips, as part of a scheme to justify the termination of Plaintiff's employment," and that defendants "conspired to terminate Plaintiff and replace him with younger, non-Polish and non-disabled worker. [sic]" (Am. Compl. ¶¶ 200-01, 122.) Plaintiff fails to allege facts to support a "meeting of the minds" or any other evidence of an agreement between defendants. Nor does he link his allegations to evidence of discrimination. As plaintiff's allegations are merely "conclusory, vague, [and] general," defendant's motion to dismiss plaintiff's § 1985(3) claim should be granted.[11] See Malcolm v. Honeoye Falls-Lima Educ. Ass'n, 678 F. Supp. 2d 100, 107 (W.D.N.Y. 2010) (dismissing plaintiff's § 1985 claim where plaintiff "offered nothing but vague and speculative allegations that the [defendant union] acted in collusion with [her employer] to deprive her of her constitutional rights and describes no specific instances of misconduct by the defendants.").

---

[11] Defendant alternatively argues that plaintiff's claim should be dismissed because § 1985(3) claims cannot be based solely on claims of employment discrimination. (Def.'s Mem. 31; Def.'s Reply 11-12.) Although defendant oversimplifies this theory, it is well-established that the "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." Sherlock v. Montefiore Medical Center, 84 F.3d 522, 527 (2d Cir. 1996) (quoting Great American Fed. Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 378 (1979)). Courts in this circuit have likewise found that claims under the ADEA and ADA, as well as state and city law, cannot be the basis for § 1985(3) claims, reasoning that § 1985(3) cannot be used to enforce statutes which already provide a mechanism for relief. See Sherlock, 84 F.3d at 527 (2d Cir. 1996) (ADEA); Caraveo v. Nielsen Media Research, Inc., No. 01 Civ. 9609 (LBS)(RLE), 2003 WL 169767, at *4 (S.D.N.Y. Jan. 22, 2003) (ADA, ADEA, NYSHRL, and NYCHRL) (Report and Recommendation rejected in part on other grounds).

## C. Plaintiff's State Law Discrimination Claims

Plaintiff also asserts claims under the New York State Human Rights Law and New York City Human Rights Law. The New York State Human Rights Law, N.Y. Exec. Law § 297(9), provides a right of action against unlawful employment discrimination practices, and as "the language of the [New York City Human Rights Law] is nearly identical to that of § 297(9), …discussion of the latter applies equally to the former." York v. Assoc. of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002). Defendant argues that plaintiff's state law claims should be dismissed based on the NYHRL's election of remedies provision (Def.'s Mem. 22-23; Def.'s Reply 9.), which states that

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages…and such other remedies as may be appropriate…*unless such person had filed a complaint hereunder or with any local commission on human rights*…provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9) (emphasis added). "Thus, by the terms of the statute and code, respectively, the NYHRL and CHRL claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court" unless one of the three exceptions listed in the statute applies. York, 286 F.3d at 127. "Furthermore, once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York." Id. (citing N.Y. Exec. Law § 298).

Plaintiff filed his charge with the DHR on November 3, 2008 (Am. Compl. ¶ 8), and none of the three statutory exceptions to the election of remedies provision in § 279(9) apply to his case. Therefore, the Court lacks subject matter jurisdiction over plaintiff's state and city law claims, see Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 883-84 (2d Cir. 1995), and plaintiff's NYSHRL and NYCHRL claims should be dismissed.[12]

---

[12] In addition, defendant argues that plaintiff's allegations of discrimination are encompassed by the union's failure to represent him, and are thus preempted by the union's duty of fair representation derived from the National Labor Relations Act. (Def.'s Mem. 33-34; Def.'s Reply 12-13.) While "[t]he Second Circuit has not addressed the issue of whether the NYSHRL is preempted by the DFR…[t]he vast majority of cases in this Circuit, when dealing with state-law claims of

# CONCLUSION

Accordingly, plaintiff's motion to file an amended complaint should be granted, and defendant Local 74's motion to dismiss plaintiff's amended complaint should be granted. The case should proceed solely against defendant Cypress Hills Cemetery.

# FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985). SO ORDERED.

             ___/S/_____
             LOIS BLOOM
             United States Magistrate Judge

Dated: August 29, 2011
    Brooklyn, New York

---

discrimination against a union, have found such claims to be subsumed by the DFR." Langford v. International Union of Operating Engineers, Local 30, No. 10 Civ. 1644(RJH), 2011 WL 672414, at *17 (S.D.N.Y. Feb. 16, 2011) (internal quotation omitted) (collecting cases). See also Cole v. Central Park Sys., Inc., No. 09–CV–3185(RRM)(CLP), 2010 WL 3747591, at *8 (E.D.N.Y. Sept. 20, 2010) ("Discrimination claims against unions…brought pursuant to New York State and City statutes do not lie. These claims are subsumed within the duty of fair representation imposed by the National Labor Relations Act…and are thus preempted.") (internal citations omitted). Plaintiff responds that his state law claims "are not estopped" and should not be dismissed because he did not have a "full and fair opportunity to contest" the DHR's decision. (Pl.'s Opp'n 23-24.) However, plaintiff mistakenly relies on the doctrines of *res judicata* and collateral estoppel in reference to his state law claims; the cases plaintiff cites discuss estoppel of *federal* discrimination claims after dismissal of plaintiffs' charges by the DHR. See e.g., Johnson v. County of Nassau, 411 F. Supp. 2d 171, 171-84 (analyzing plaintiff's Section 1981 and 1983 claims under the doctrine of *res judicata*, and dismissing his N.Y. Exec. Law § 297(9) claim based on the election of remedies).