D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOZEF KLAPER,

                              Plaintiff,                    **MEMORANDUM & ORDER**

        -against-                                           **10-CV-1811 (NGG) (LB)**

CYPRESS HILLS CEMETERY,

                              Defendant.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

        Before the court are Plaintiff Jozef Klaper's ("Plaintiff" or "Klaper") and Defendant

Cypress Hills Cemetery's ("Defendant" or "CHC") timely filed objections to Magistrate Judge

Lois Bloom's Report and Recommendation ("R&R"), dated February 7, 2014, which

recommended granting Defendant's motion for summary judgment in part and declining to

exercise jurisdiction over Plaintiff's remaining state law claims. For the reasons set forth below,

the R&R is ADOPTED in part and REJECTED in part.[1]

## I.    BACKGROUND

        On April 20, 2010, Plaintiff commenced this action pro se against CHC and his former

labor union, the United Service Workers Union Local 74 ("Local 74"), alleging that both CHC

and the union discriminated against him on the basis of age, national origin, and disability by

terminating his employment on October 9, 2008. Plaintiff subsequently retained counsel in this

matter. Except where specifically objected to, the court incorporates by reference the careful and

detailed recitation of facts relevant to the instant motion contained in the R&R. (R&R at 2-5.)

        In brief, Plaintiff—a sixty-six-year-old man of Polish descent—was employed by CHC as

a groundskeeper and maintenance worker from May 9, 2005, to October 9, 2008, when his

---

[1] Plaintiff's request for oral argument on his objections to the R&R is denied as unnecessary. (Dkt. 94.)

1

employment was terminated. (Id. at 2, 5.) Plaintiff was supervised in his work by John Nicastro, among other CHC foremen, who he alleges mocked and otherwise verbally abused him, at least in part on the basis of his Polish heritage. (Id.) On Thursday, June 26 and Friday, June 27, 2008, Plaintiff was issued two employee warning slips: the first for allegedly poor job performance following an incident between Plaintiff and Nicastro that appears to have involved the latter's "yelling" and "bad mouthing" Plaintiff, and the second after Plaintiff allegedly made threats of physical violence concerning Nicastro, threatened to "kill him," and was seen by a CHC employee carrying a gun near the cemetery saying "it was [f]or John Nicastro." (Id. at 2-3.) After suffering a "breakdown" over the weekend during which he "drank a little," Plaintiff failed to report for work on three consecutive days and was terminated by CHC on July 2, 2008, for job abandonment. (Id.) However, there is a dispute between the parties as to whether or not Plaintiff appropriately informed CHC of his anticipated absence on those days. (Id.)

A week later, Plaintiff's union representative contacted CHC to request that Klaper be given a second chance, informing CHC that he suffered from a "substance abuse problem." (Id. at 3.) Defendant assented to the request, and on July 8, 2008, Plaintiff signed a "last chance stipulation"[2] (the "Stipulation") that suspended him for three months and required him to seek and complete treatment for his alcoholism during the suspension.[3] (Id.) The Stipulation also set

---

[2] The agreement among CHC and Plaintiff, dated July 8, 2008, is alternatively referred to in the parties' papers and the court's earlier decision in this case as a "last chance agreement" or "last chance stipulation." For purposes of clarity and consistency in this Memorandum and Order, the court will refer to this agreement as the "Stipulation."

[3] In its entirety, the Stipulation provides:

"I, Jozef Klaper, with the advice of my union representative, agree to the following stipulation's [sic] relating to the complaint filed on 7/02/2008 by my Superintendent, Anthony Russo.

    1.) Jozef will be suspended for three months with a scheduled return to work date of October 1st, 2008. Cypress Hills Cemetery will continue paying for his benefits during the three month period of suspension.

    2.) Jozef will lose seniority and go to the bottom of the seniority list.

    3.) Jozef will enter an Alcohol Rehabilitation Program, during his suspension, and show proof of successfully completing the Alcohol Rehabilitation Program.

Plaintiff's "return to work date" as October 1, 2008. (Id.) Klaper received treatment for his alcoholism in August 2008, but suffered a relapse on or about September 1, 2008, and was admitted to an in-patient treatment program on September 4, 2008. (Id. at 4.)

Though released from that program on October 1, 2008, the date on which he was required to return to work under the Stipulation, Plaintiff did not report to work at CHC until October 6, 2008. On October 1, 2, and 3, 2008, Plaintiff's psychotherapist, George Wawrzonek, repeatedly contacted CHC to inform it that Plaintiff was too anxious to return to work, but received no response. (Id.) Defendant disputes that any messages were received. (Id.) Plaintiff reported for work on October 6, 2008, but was told to go home. (Id.) Upon learning that Plaintiff had been turned away, Dr. Roman Pabis, the director of the clinic at which Wawrzonek worked, sent a fax to CHC urging it to reconsider its decision and proposing that Klaper could take certain medications to control his alcoholism. (Id. at 4-5.) Plaintiff was ultimately terminated by CHC on October 9, 2008. (Id.)

Prior to initiating this action, Plaintiff filed a similar complaint with the New York State Division of Human Rights ("NYSDHR") on November 3, 2008, which issued a formal determination in February 2010 finding no probable cause to support the complaint. (R&R at 5.) On March 21, 2012, the court dismissed Plaintiff's claims against the Local 74, but granted him leave to amend the complaint against CHC. (Mem. and Order, Mar. 21, 2012 ("Klaper I") (Dkt. 57).) Two days later, on March 23, 2012, and with the assistance of counsel, Plaintiff filed an Amended Complaint alleging violations of: the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") (Claim 1); Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

---

4.) Jozef agrees to release his records, to Cypress Hills Cemetery, upon approved release from the Alcohol Rehabilitation Program.
5.) This is a final chance stipulation (subject to termination following any new occurrence in the violation of our rules and regulations)."

(Ex. R (Dkt. 82-22).)

3

(Claim 2); the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (Claim 3); 42

U.S.C. § 1985 (Claim 4); the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

("NYSHRL") (Claim 5); the New York City Human Rights Law § 8-107 et seq. ("NYCHRL")

(Claim 6); and several state common law causes of action (Claims 7, 8, and 9).[4] (Am Compl.

(Dkt. 58).)

On May 3, 2013, having concluded discovery in this case, Defendant filed a motion for

summary judgment on all causes of action pursuant to Federal Rule of Civil Procedure 56. (Mot.

for Summ. J. ("Def. Mot.") (Dkts. 82, 83).) Plaintiff did not oppose entry of summary judgment

on Claims 2, 3, 4, 7, 8, and 9, but opposed the motion on the ADA, NYSHRL, and NYCHRL

claims (Claims 1, 5, and 6). (Mem. of Law in Opp'n to Def. Mot. for Summ J. ("Pl. Opp'n")

(Dkts. 84, 85) at 1-2.) The court referred Defendant's motion to Magistrate Judge Lois Bloom

for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil

Procedure 72(b)(1). (Order, Oct. 25, 2013 (Dkt. 87).)

On February 7, 2014, Judge Bloom issued an R&R recommending that CHC's motion for

summary judgment be granted as to the ADA claims and that the court should decline to exercise

supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims. (R&R at

1.) Specifically, with regard to the ADA claims, Judge Bloom concluded that Plaintiff was

terminated for violating his last chance stipulation by not reporting for work on October 1, rather

than because of his alcoholism, and that by affording Klaper a second chance CHC had already

afforded him reasonable accommodation. (R&R 9-19.) The R&R also recommends that the

court decline to exercise supplemental jurisdiction over the remaining state law claims pursuant

to 28 U.S.C. § 1367(c)(4), as such a decision would not result in prejudice or require additional

---

[4] Claims 10-15 in the Amended Complaint were dismissed by the court in Klaper I. This incongruity is explained by the fact that while the Amended Complaint was filed on March 23, 2012, subsequent to the court's decision on Local 74's motion to dismiss, it was signed by Plaintiff's counsel on November 2, 2010. (Am. Compl. at 29.)

4

discovery. (R&R at 19-22.) On February 28, 2014, within the period designated by the court (Order, Feb. 18, 2014), counsel for both parties timely filed various objections to the R&R (Def.'s Obj. to Magistrate Judge's R&R ("CHC Obj.") (Dkt. 90); Pl.'s Obj. to the Magistrate Judge's R&R ("Pl. Obj") (Dkt. 91). Responses were filed on March 7, 2014. (Pl.'s Opp'n to CHC Obj. ("Pl. Resp.") (Dkt. 92); Def.'s Opp'n to Pl. Obj. ("CHC Resp.") (Dkt. 93).)

## II.    STANDARD OF REVIEW

When a magistrate judge issues an R&R and it has been served on the parties, the parties generally have fourteen days in which to file an objection to the R&R. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, to obtain this de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [he] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R].").

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entergris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under [] Fed. R. Civ. P. 72(b)"). Portions

of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at \*2.

## III. DISCUSSION

### A. Standard of Review

To the extent de novo review is required, under Federal Rule of Civil Procedure 56(a) summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden of making this showing rests upon the party moving for summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party, in order to defeat the motion, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. Anderson, 477 U.S. at 250. Only "specific facts" grounded in testimony or other admissible evidence create a genuine issue. Id. "[M]ere allegations or denials" of the adverse party's pleadings, id., and "the presentation of assertions that are conclusory," Patterson v. Cnty. of Onieda, N.Y., 375 F.3d 206, 219 (2d Cir. 2004), or

6

"conjecture[] or speculation" from the non-movant, <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996), do not create a genuine issue.

## B. Plaintiff's Objections

### 1. Objection 1: Law of the Case Doctrine

Plaintiff first objects to Judge Bloom's recommendation that the law of the case doctrine should be applied to the court's determination in <u>Klaper I</u> that CHC did not breach the terms of the Stipulation by failing to respond to Wawrzonek's phone messages in early October 2008 or by terminating Plaintiff. (Pl. Obj. at 2-5.) Arguing that Plaintiff has not, in fact, presented any new evidence warranting reexamination of the issue, CHC urges the court to adhere to its earlier decision. (CHC Resp. at 1-2.) Seeing no cause to revisit its earlier determination, the court overrules Plaintiff's first objection.

The law of the case doctrine "commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" <u>Johnson v. Holder</u>, 564 F.3d 95, 99 (2d Cir. 2009) (quoting <u>United States v. Quintieri</u>, 306 F.3d 1217, 1225 (2d Cir. 2002)). Such "cogent" or "compelling" reasons include "an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" <u>Id.</u> at 99-100 (quoting <u>Quintieri</u>, 306 F.3d at 1230). The law of the case doctrine is discretionary, however. As noted by the Second Circuit, "the law of the case doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" <u>Id.</u> at 99 (citation omitted); <u>see also</u> <u>Deveilla v. Schriver</u>, 245 F.3d 192, 197 (2d Cir. 2001) (noting the doctrine "merely expresses the practice of the courts generally to refuse to reopen what has been decided" (quoting <u>Messinger v. Anderson</u>, 225 U.S. 436, 444 (1912))). Further, and notwithstanding Plaintiff's unsupported

7

assertion to the contrary, the court may apply the law of the case doctrine to a legal determination made at the motion to dismiss stage. See Nobel Ins. Co. v. City of New York, No. 00-CV-1328 (KMK), 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) (refusing to reconsider "legal conclusions" made when deciding a motion to dismiss "which are not in any way altered by discovery, or by subsequent developments in the law" in connection with a subsequent motion for summary judgment); see also Viti v. Guardian Life Ins. Co. of Am., No. 10-CV-2908 (ALC), 2013 WL 6500515, at *3-4 (S.D.N.Y. 2013); S.E.C. v. Tourre, No. 10-CV-3229 (KBF), 2013 WL 2407172, at *9 n.11 (applying doctrine to the court's interpretation of the term "offer" at motion to dismiss stage in connection with a subsequent motion for summary judgment).

Here, as the R&R correctly noted, the court's determination in Klaper I that CHC had not breached the Stipulation was subject to the law of the case doctrine.[5] (R&R at 6-7.) In its motion to dismiss opinion, the court rejected Plaintiff's contention that CHC had breached the Stipulation by (1) failing to respond to Plaintiff's indirect requests for additional accommodation made by Wawrzonek and Pabis and by (2) terminating his employment "while he was continuing with, and before the agreed to completion of the [Alcohol Rehabilitation] Program.'" (Klaper I at *17 n.13.) That legal determination was premised on the clear and unambiguous terms of the Stipulation, which, among other things, set Klaper's "return to work date" as October 1, 2008, required that he enter and complete treatment for his alcoholism "during his [three-month] suspension," and imposed no additional obligations on CHC after the original suspension concluded. Even taking the facts as alleged in the Complaint, id. at *6, the court found that the Stipulation "does not contain any provision for accommodations after the three-month suspension, and the 'agreed to completion of the' program was on October 1, 2008, the date of

---

[5] In fact, of the various "findings" identified by Defendant as being subject to a prior determination of the court, Judge Bloom identified only the single issue discussed here as being a decision on an issue of law to which the law of the case doctrine may be applied. (See R&R at 6-7.)

8

completion of the suspension." Id. That determination remains law of the case absent good cause warranting reconsideration. See Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc., No. 11-CV-3130 (JSR), 2013 WL 342693, at *2-4 (S.D.N.Y. Jan. 29, 2013) (describing an earlier opinion interpreting contractual language as deciding an issue of law, and affording that interpretation "law of the case status"); Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc., 819 F. Supp. 2d 230, 238-39 (S.D.N.Y. 2011) (applying law of the case doctrine to court's interpretation of a contractual clause); cf. Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002) (noting that the "proper interpretation of an unambiguous contract is a question for law for the court"). (See also R&R at 6-7 (finding this decision was on an issue of law, rather than fact).)

Plaintiff's "new evidence" is insufficient to warrant reopening the court's interpretation of the plain terms of the Stipulation or CHC's compliance therewith. In his objections to the R&R, Klaper argues that evidence uncovered in discovery shows that Wawrzonek "did in fact call CHC" on plaintiff's behalf during the first week of October 2008 and Dr. Pabis did send a fax to CHC on October 6, 2008, addressing Plaintiff's continuing treatment, the seriousness of his disability, and proposed accommodations. (Pl. Obj. at 3-5.) The court recognizes that these facts remain in dispute and represent a material issue of fact for the purposes of the instant motion. (See R&R at 4,14.) However, notwithstanding its relevance as potential support for Plaintiff's reasonable accommodation claims,[6] this "new" evidence has no bearing on how the court interprets the clear and unambiguous terms of the Stipulation. Accordingly, the court finds no "cogent" or "compelling" reason to revisit its earlier determination rejecting Plaintiff's contention that CHC had itself breached the Stipulation.

---

[6] To the extent Plaintiff argues that CHC breached the Stipulation by failing to afford him reasonable accommodation in October 2008, that issue is addressed in greater detail in Part III.B.3.

2.     Objection 2: Wrongful Termination Claim

Plaintiff next objects to Judge Bloom's recommendation that summary judgment should be granted as to his wrongful termination claim under the ADA because Plaintiff was terminated for violating the terms of the Stipulation, rather than "because of" his alcoholism, and that Plaintiff's breach constituted a legitimate, nondiscriminatory justification for the adverse employment decision. (R&R at 15-16.) Plaintiff asserts that the Magistrate Judge erred in applying the McDonnell Douglas burden-shifting framework, and accordingly that his wrongful termination claim is meritorious because CHC's decision to terminate his employment was attributable to his disability. (Pl. Obj. at 5-12.) The court disagrees in both respects.

It is well-established that claims "alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)." McBride v. BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009). Under this framework, plaintiffs bear the initial burden of establishing a prima facie case of discrimination on the basis of disability. Id. "To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (internal quotation marks omitted); Morse v. JetBlue Airways Corp., 941 F. Supp. 2d 274, 304 (E.D.N.Y. 2013). Upon establishing the existence of a prima facie case, "the burden of production shifts to the defendants to provide a legitimate, nondiscriminatory reason for their decision." Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294

F.3d 35, 49 (2d Cir. 2002). If shown, "the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista, 445 F.3d at 169.

Plaintiff argues—apparently for the first time in his objection—that the Magistrate Judge instead should have applied the analytical framework described by the Second Circuit in Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511 (2d Cir. 1991). In Teahan, the Second Circuit held that where an employer "does not disclaim" that it relied on the employee's disability in making an adverse employment decision, and instead acknowledges such reliance, the final step of the McDonnell Douglas framework requiring plaintiffs to establish pretext is unnecessary. Teahan, 951 F.2d at 514-15; see also McMillan v. City of New York, 711 F.3d 120, 129 (2d Cir. 2013) ("When the parties *agree* that the employer complains of conduct that is the direct result of the employee's disability . . . there is no need to evaluate whether the employer's adverse employment action made in response to that conduct is pretextual." (emphasis added)). In such cases, the pivotal issue is not whether the employer impermissibly relied on a plaintiff's disability in taking adverse action, but whether that disability provides adequate grounds for finding that the disabled employee was not otherwise qualified for the position. See McMillan, 711 F.3d at 129 ("Pretext is not an issue in this case . . . [plaintiff] need only demonstrate that, with reasonable accommodations, he could have performed the essential functions of his job."). As such, Plaintiff argues that the Magistrate Judge erred in requiring him to rebut CHC's legitimate, nondiscriminatory justification that he was fired for violating the Stipulation, and that he "need only demonstrate that, with reasonable accommodations, he could have performed the essential functions of his job." (Id.)

Plaintiff's argument fails for several reasons. As a threshold matter, CHC neither "agrees" nor "acknowledges" that it relied upon Klaper's alcoholism in deciding to terminate his

11

employment. To the contrary, Defendant avers that Klaper was terminated for the legitimate, nondiscriminatory reason that he violated his last chance agreement by, among other things, failing to report to work on October 1, 2008. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def. Mot.") (Dkt. 82-1) at 19-20; Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def. Reply") (Dkt. 86) at 6-7; see also Ex. U[7] (termination letter advising Klaper that he was terminated for violating the Stipulation); Ex. F (Russo Dep.) at 173-76; Ex. G (Herron Dep.) at 76.) Relying on Teahan, Plaintiff attempts to overcome this obstacle by asserting that CHC fired him "because of his absenteeism . . . which was directly caused by his alcoholism." (Pl. Obj. at 6-8.) But Plaintiff was not fired for the type of "excessive absenteeism" at issue in Teahan; instead, Klaper was terminated for breaching the plain terms of his last chance agreement with CHC. Unlike the case in Teahan, the presence of a "last chance" or "return to work" agreement introduces the possibility that Plaintiff was fired for a valid, nondiscriminatory reason and calls for the application of McDonnell Douglas framework to "weed out non-viable claims of discrimination." McMillan, 711 F.3d at 129.

Indeed, courts regularly apply McDonnell Douglas and require plaintiffs to discharge their burden of proving pretext when considering ADA discrimination suits in which the employer's decision is predicated on the employee's breach of such a contract. See, e.g., Merkl v. Allied Bldg. Prods. Corp., No. 09-CV-3085 (DLI), 2013 WL 1346032, at *3 (E.D.N.Y. Mar. 28, 2013); Mayo v. Columbia Univ., No. 01-CV-2002 (LMM), 2003 WL 1824628, at *5-6 (S.D.N.Y. Apr. 7, 2003) (collecting cases); see also Ostrowski v. Con-Way Freight, Inc., 543 F.

---

[7] Unless otherwise noted, citations in the form "Ex. __" refer to exhibits attached to the Declaration of Richard J. Cea in Support of Defendant's Rule 56 Motion for Summary Judgment, dated February 22, 2013. (Dkt. 82-2.)

App'x 128, 131 (3d Cir. 2013).[8] This remains true even where the employee's breach is plainly

the result of the same disability that necessitated the agreement in the first place. In <u>Merkl v.</u>

<u>Allied Building Products, Corp.</u>, for example, the district court applied a full <u>McDonnell</u>

<u>Douglas</u> analysis in concluding that an employer did not discriminate against an alcoholic

employee when it terminated him for breaching his return to work agreement by failing a

Breathalyzer test. 2013 WL 1346032, at *9-12. Accordingly, consistent with the bulk of

authority on this issue, the court agrees with Judge Bloom that Klaper's ADA claims are

properly considered under the burden-shifting framework established in <u>McDonnell Douglas</u>.

(R&R at 8.)

Even if Plaintiff could establish his prima facie case under the ADA,[9] Plaintiff's violation

of the last chance stipulation constituted a legitimate, nondiscriminatory justification for CHC's

decision to terminate his employment. See, e.g., <u>Merkl</u>, 2013 WL 1346032, at *9-10; <u>Mayo</u>,

2003 WL 1824628, at *6-7 (collecting cases from outside the Second Circuit finding similarly);

<u>Woolcott v. E.I. Dupont De Nemours & Co., Inc.</u>, No. 95-CV-0721, 1997 WL 251475, at *5

(W.D.N.Y. Apr. 29, 1997); cf. <u>Paladino v. DHL Express (USA), Inc.</u>, No. 07-CV-1579 (DRH),

2010 WL 1257786 (E.D.N.Y. Mar. 26, 2010) (finding legitimate, nondiscriminatory basis for

firing under NYSHRL predicated on violation of last chance agreement).[10] After his initial

---

[8] Plaintiff's reliance on <u>Shavuo v. Shinseki</u>, No. 10-CV-2914 (MEA), 2013 WL 1335645 (S.D.N.Y. Apr. 3, 2013), is unavailing. While the court in <u>Shavuo</u> did note the existence of both analytical frameworks in the course of considering a motion in limine, it applied neither.

[9] Plaintiff likewise challenges Judge Bloom's determination that he was terminated "because of" his breach of the Stipulation, rather than "because of" his alcoholism. For the limited purpose of deciding the instant motion, the court assumes that Plaintiff has established a prima facie case of wrongful termination under the ADA. See, e.g., <u>Merkl</u>, 2013 WL 1346032, at *7 (assuming existence of prima facie case for purposes of granting summary judgment where plaintiff was terminated for violating a last chance agreement); <u>Mayo</u>, 2003 WL 1824628, at *6-7 (same). For the reasons set forth in this section, Plaintiff fails to make out a claim under the ADA as a matter of law because CHC has proffered a legitimate, non-discriminatory reason for Plaintiff's termination, which Plaintiff cannot establish was a pretext for prohibited discrimination.

[10] Additionally, numerous Courts of Appeals have also found that the violation of a "return to work" or "last chance" agreement constitutes a legitimate, nondiscriminatory justification for adverse employment action. See

13

termination in July 2008, Plaintiff agreed to satisfy the conditions set out in the Stipulation in exchange for his continued employment at CHC. That agreement, by its unambiguous terms, required Plaintiff to enter and complete an alcohol rehabilitation program "during his [three-month] suspension" and set a "return to work date" of October 1, 2008, among other things. (Ex. U.) The agreement was translated into Polish for Plaintiff by an employee of his union (Ex. E (Klaper Dep.) at 98), and both Klaper and his therapist's affidavits evince an understanding that he was obligated to return to work on October 1, 2008 (see Decl. of Tomasz J. Piotrowski, Apr. 12, 2013, Ex. 3 ("Pl. Aff.") at ¶ 5; Id., Ex. 2 ("Wawrzonek Aff.") at ¶ 14.) By his own admission, however, Plaintiff did not report for work on October 1, 2008—indeed, he did not report to work until October 6—thereby violating the terms of the Stipulation. (Pl. Aff. ¶ 8; Pl.'s Rule 56.1 Statement ("Pl. 56.1") (Dkt. 85-2) (sealed) at ¶ 70; see also Pl. Obj. at 6 (referencing Klaper's "violation" of the Stipulation).) Nor did he complete his treatment during the unpaid leave afforded by CHC, though this does not appear to have been a basis for his termination. (See Pl. Obj. at 8. (arguing that Plaintiff was undergoing treatment on October 1-3, 2008).)

Plaintiff fails to demonstrate that CHC's proffered nondiscriminatory justification for his termination—his violation of the Stipulation—was a pretext for firing him due to his alcoholism. (See R&R at 16.) Though not addressed by Judge Bloom, Plaintiff argues that CHC's claimed reliance on his violation of the Stipulation is pretextual because "the terms of the Stipulation do not allow for termination for any violation of the Stipulation's provisions." (Pl. Opp'n at 12; see

---

Ostrowski v. Con-Way Freight, Inc., 543 F. App'x 128, 131 (3d Cir. 2013) ("Because the [return to work agreement] was not invalid under the ADA, [Plaintiff's] violation of its terms was a legitimate, non-discriminatory reason" for him to be terminated); Longen v. Waterous Co., 347 F.3d 685, 689 (8th Cir. 2003) (noting "courts have consistently found no disability discrimination in discharges pursuant to such agreements"); Mararri v. WCI Steel, Inc., 130 F.3d 1180, 1181-85 (6th Cir. 1997) (employer did not violate ADA when it terminated alcoholic employee who breached terms of last chance agreement); see also Nelson v. Williams Field Servs. Co., 216 F.3d 1088, at *4 (10th Cir. 2000) (unpublished); Sidhu v. Henderson, 173 F.3d 861 (9th Cir. 1999) (unpublished).

Ex. R (providing for termination based on new violations of "rules and regulations"); Ex. F (Russo Dep.) at 174-76 (stating that "rules and regulations" refers to collective bargaining agreement).) This argument plainly is without merit, and Plaintiff provides no evidence or explanation as to why it establishes that he was fired for being an alcoholic. There is no dispute between the parties that Plaintiff was terminated by CHC on July 2, 2008 (Ex. V (July 2, 2008, Termination Letter), and that CHC only reversed its decision after the union interceded on Klaper's behalf and he signed the Stipulation (see Pl. 56.1 ¶ 50, 53; Ex. F (Russo Dep.) at 160, 164-74; Ex. G (Herron Dep.) at 59-66.) Even if termination rights were not expressly set out in the agreement, as Plaintiff argues, it is black letter law that Klaper's breach of the material terms of the agreement—i.e., the concessions and conditions agreed-to in exchange for his reinstatement—relieved CHC of its obligation to continue his employment. See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007) (holding "a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach"); Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997) (stating that a breach is material if it "go[es] to the root of the agreement between the parties" (internal quotation omitted)).

Nor can Plaintiff discharge his burden to establish pretext by arguing that his breach of the Stipulation is traceable to his alcoholism. (See Pl. Obj. at 5-6, 8-10.) As the Sixth Circuit noted in Mararri v. WCI Steel, Inc., when it rejected a similar argument, this reasoning "skips a key step of reality." 130 F.3d at 1183 (quoting Golson-El v. Runyon, 812 F. Supp. 558 (E.D. Pa.), aff'd 8 F.3d 811 (3d Cir. 1993) (table)). Namely, CHC previously accommodated Plaintiff's alcoholism by offering to allow him to remain an employee if he satisfied his

obligations under the Stipulation. If Plaintiff's reasoning were correct, the Stipulation—and indeed all "last chance" or "return to work" agreements for alcoholic employees—would be rendered nugatory because they would leave the employer with no recourse if the employee continued the alcoholism-related misconduct that required the execution of a "last chance" agreement in the first place. That is not, and should not, be the law. See, e.g., Ostrowski, 543 F. App'x at 129-131; Merkl, 2013 WL 1346032, at *9-12 (finding no discrimination where employee breached last chance agreement by failing Breathalyzer test). In fact, were Plaintiff correct, employers would have little incentive to give alcoholic or substance abusing employees a chance at reinstatement similar to that afforded to Plaintiff here. Accordingly, consistent with other courts to have considered this issue, the court finds that Plaintiff has failed to establish that CHC assertion that he was fired for breaching his "last chance" agreement was at all pretextual or false.[11]

Accordingly, consistent with the R&R's recommendation, the court finds that CHC had a legitimate, nondiscriminatory justification for its decision to terminate Klaper's employment in October 2008, and further that Plaintiff failed to demonstrate that such justification was a pretext for firing him due to his alcoholism.[12] Plaintiff's objection concerning his wrongful termination claim is therefore overruled.

### 3. Objection 3: Reasonable Accommodation Claim

Plaintiff also objects to Judge Bloom's recommendation that "summary judgment should be granted on [P]laintiff's ADA claims regarding [D]efendant's failure to accommodate." (R&R at 16-19.) Judge Bloom found that CHC had already afforded sufficient accommodation to

---

[11] While the court may believe that CHC's decision to terminate Klaper on the basis of his failure to report for work on October 1, 2008, was harsh, the ADA does not compel an employer to excuse an employee's breach of a "last chance" agreement.

[12] To the extent Plaintiff also attempts to establish pretext by arguing that CHC failed to afford reasonable accommodation when requested, that argument fails for the reasons set forth Part III.B.3.

Plaintiff by permitting him to return to work after a three-month suspension subject to the conditions set out in the Stipulation, and that in any case Plaintiff's indirect requests for additional accommodation were only made after the Stipulation had been breached. (Id.) The court agrees.

Plaintiff challenges Judge Bloom's recommendation by arguing that she erred in finding that CHC had discharged its obligation to reasonably accommodate Klaper's alcoholism by entering into the Stipulation. (Pl. Obj. at 12-14.) Instead, Klaper argues that CHC's "duty to make reasonable accommodations is a continuing one," and that CHC failed to engage in an interactive process with Plaintiff when additional accommodation was requested on his behalf by Mr. Wawrzonek and Dr. Pabis. (Id. (internal quotation marks and citation omitted).) He argues that by Mr. Wawrzonek's calls informing CHC that Klaper would not return to work until Monday, October 6, 2008—which were first made in the afternoon of Wednesday, October 1— Plaintiff effectively "requested an accommodation of postponing [his] start of employment date by three business days." (Pl. Obj. at 13 (emphasis removed).) Plaintiff also points to the fax sent to CHC by Dr. Pabis on October 6, 2008, proposing that Klaper could take medication to treat his alcoholism and prevent further relapses. (Id. at 13-14; Ex. S (Dkt. 83-6) (sealed) at 1.) Because these requests preceded Plaintiff's termination on October 9, 2008, he argues they were timely. (Pl. Obj. at 16-17.) CHC counters by arguing that it had already accommodated Plaintiff's disability to the extent required by the ADA, as the R&R found, and that Plaintiff had violated the Stipulation before any additional requests were made. (CHC Resp. at 3-4.)

In addition to discriminatory discharge, an employer may be liable under the ADA if it fails to make reasonable accommodation for an otherwise qualified employee with a disability. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir. 2000) ("We have ruled that

failure to make reasonable accommodation, when the employee has satisfied the first three elements of his claim, amounts to discharge 'because of' his disability."). A plaintiff makes out a prima facie case of disability discrimination based on failure to accommodate by showing: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006). Upon making a showing that the costs of a proposed accommodation "do not on their face obviously exceed the benefits," the defendant bears the burden of persuasion concerning the reasonableness of that accommodation. McBride, 583 F.3d at 97 n.3. However, a "requested accommodation that simply excuses past misconduct is unreasonable as a matter of law." McElwee v. Cty. of Orange, 700 F.3d 635, 641 (2d Cir. 2012); see also Canales-Jacobs v. N.Y.S. Office of Court Amin., 640 F. Supp. 2d 482, 500-01 (S.D.N.Y. 2009); U.S. Equal Emp't Opportunity Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, 2002 WL 31994335, at Question 36 (2002) ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.").

With regard to alcoholism, "ADA's requirement that an employer reasonably accommodate an alcoholic employee requires no more than that such employee be given unpaid time off to participate in a treatment program." Van Ever v. N.Y. State Dep't of Corr. Servs. at Sing Sing Corr. Facility, No. 99-CV-12348 (SAS), 2000 WL 1727713, at *3-4 (S.D.N.Y. Nov. 21, 2000) (quoting Woolcott, 1997 WL 251475, at *4); Clifford v. Cnty. of Rockland, No. 10-CV-9679 (VB), 2012 WL 2866268, at *5 (S.D.N.Y. June 25, 2012) (same), aff'd, 528 F. App'x

6 (2d Cir. 2013). The ADA does not require that employers tolerate misconduct traceable to an employee's alcoholism, nor does it protect alcoholics from the consequences of their own behavior. See Woolcott, 1997 WL 251475, at *4 (noting "alcoholics are not exempt from reasonable rules of conduct and that an employer need not tolerate an alcoholic's misconduct" and "the ADA does not protect an alcoholic from the consequences of his misconduct"); Brennan v. New York Police Dep't, No. 93-CV-8461 (BSJ), 1997 WL 811543, at *5 (S.D.N.Y. May 27, 1997), aff'd sub nom. Brennan v. New York City Police Dep't, 141 F.3d 1151 (2d Cir. 1998) ("[C]ourts have consistently found that termination in the context of misconduct that is tied or related to alcoholism does not violate the ADA.").

Here, as the R&R rightly found, CHC had already accommodated Plaintiff to the extent required by the ADA by reversing its initial termination decision in July 2008 upon learning of Plaintiff's alcoholism. This second chance was not required under the ADA, as the termination followed serious allegations of on-the-job misconduct. To wit, CHC presents documentary and testimonial evidence that Plaintiff was fired on July 2, 2008, after receiving employee warning slips on June 26 and 27, 2008, for poor job performance and for making threats of physical violence concerning Nicastro—including that he would "kill him." (Exs. O, P, Q; see also Ex. F (Russo Dep.) at 121-28, 134-38.) The incident report accompanying the June 27, 2008, warning slip also notes that Klaper allegedly was seen carrying a gun near the cemetery saying that it was "[f]or John Nicastro." (Ex. Q.) On the following Wednesday, July 2, 2008, CHC decided to terminate Klaper for "job abandonment" after he failed to report for work that week (Ex. V), though there remains a material dispute of fact as to whether Klaper properly alerted CHC of those anticipated absences (see R&R 13-14.) While CHC likely had just cause to terminate him at that time, it offered to reinstate Klaper to his former position in exchange for his promise to

comply with the terms of the Stipulation. Klaper was given three-months unpaid leave under the Stipulation, during which he was required to seek and complete treatment for his alcoholism and was directed to return to work on a date certain. Thus, to the extent such accommodation was even required, CHC's offer to reinstate Klaper subject to the express conditions set out in the Stipulation represented sufficient and reasonable accommodation to his alcoholism under the ADA.

Plaintiff's argument that the ADA further required CHC to excuse his breach of the Stipulation fails as a matter of law. While Plaintiff is correct that an employer's provision of some form of accommodation does not immunize it from ADA liability, see, e.g., Noon v. Int'l Bus. Machs., No. 12-CV-4544 (CM), 2013 WL 6504410, at *10 (S.D.N.Y. Dec. 11, 2013), here the court is satisfied that CHC satisfied its statutory obligations vis-à-vis Klaper by entering into the Stipulation, see Van Ever, 2000 WL 1727713, at *3-4; Woolcott, 1997 WL 251475, at *4; Clifford, 2012 WL 2866268, at *5. Moreover, "it is generally 'the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" McElwee, 700 F.3d at 641. Yet Plaintiff concedes that Wawrzonek did not call CHC on his behalf until the afternoon of October 1, 2008, and that Dr. Pabis did not send his fax to CHC until October 6, 2012. Accordingly, consistent with Judge Bloom's recommendation, the court finds that Klaper was already in material breach of the last chance Stipulation by the time the first request was made.[13] Simply put, the ADA does not require that CHC excuse Klaper's failure to adhere to the Stipulation or compel it to grant his requests for additional

---

[13] As Judge Bloom noted, both Klaper and Russo testified at their respective depositions that Plaintiff's regular work schedule was 7:00 a.m. to 4:00 p.m., Monday to Friday. (R&R at 19 n.14.) The court also notes that Plaintiff has put forward no explanation why it was not possible for him or his caregivers to contact CHC prior to October 1, 2008, to request additional time for him to complete treatment as required under CHC's absence reporting policy. (Ex. F (Russo Dep.) at 153 (describing policy that employees were required to call in morning to notify CHC of absence).)

accommodation beyond that already afforded. McElwee, 700 F.3d at 641 ("A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law."); Woolcott, 1997 WL 251475, at *4 ("Asking for a second chance and to be absolved of one's past misconduct is not a request for accommodation."). In reality, Klaper sought another second chance rather than a prospective accommodation of the type envisioned in the ADA.

The court therefore concurs in Judge Bloom's recommendation that CHC reasonably accommodated Klaper's disability to the extent required by the ADA in July 2008. Further, CHC was not required under the ADA to absolve Klaper of his own misconduct, namely his breach of the Stipulation.

### 4.     Objection 4: Interactive Process

Finally, Plaintiff objects that the R&R did not address his claim that CHC "fail[ed] to engage in the interactive process." (Pl. Obj. at 17.) In its opposition to the instant motion, Plaintiff argues that by not responding to requests for accommodation made on his behalf in October 2008, CHC failed to "engage in the interactive process envisioned by the ADA, by which employer and employee work together to assess whether an employee's disability can be reasonably accommodated." (Pl. Opp'n at 17 (internal citation and quotation marks omitted).)

However, this is not an independent basis for liability under the ADA. See McBride, 583 F.3d at 101 ("[A]n employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA" unless reasonable accommodation was otherwise available and wrongfully denied); Graves v. Finch Pruyn & Co., Inc., 353 F. App'x 558, 561 (2d Cir. 2009) ("[W]e recently held that an employee may not rely on a company's failure to engage in an interactive process if he cannot also make a prima facie showing that a reasonable accommodation existed at the time of the adverse employment action.") Rather, the "interactive

process" cited by Plaintiffs and envisioned by the ADA is part and parcel of Plaintiff's reasonable accommodation claim. See McBride, 583 F.3d at 101-02; see also Thompson v. N.Y.C. Dep't of Probation, 348 F. App'x 653, 645 (2d Cir. 2009) (describing the "interactive process" as part of the reasonable accommodation standard); Jackan v. N.Y. State Dep't of Labor, 205 F.3d at 562, 566 (2d Cir. 2000) (same).

As Plaintiff's "interactive process" argument is indistinguishable from the reasonable accommodation claim that the court has already has considered and rejected, it need not be considered separately and Plaintiff's objection in this regard is overruled.

### C. CHC Objections

#### 1. Objection 1: Abandoned Causes of Action

CHC objects to the R&R on the grounds that it does not reflect Plaintiff's decision not to contest CHC's motion for summary judgment on Causes of Action 2, 3, 4, 7, 8, and 9. (CHC Obj. at 4-5.) This simply is not the case. Noting Plaintiff's decision not to oppose the motion on these claims, the R&R recommended that "defendant's motion for summary judgment should be granted on these six claims." (R&R at 1 n.1.) The court agrees and CHC's objection therefore is overruled.

#### 2. Objections Concerning NYSHRL and NYCHRL Claims

CHC's remaining objections all concern Judge Bloom's recommendations relating to Plaintiffs' NYSHRL and NYCHRL claims, which allege discrimination on the basis of age, national origin, and disability. (CHC Obj. at 6-11; Am. Compl. ¶¶ 156-161.) For the reasons set forth below, and in light of the court's decision not to retain jurisdiction over Plaintiff's pendent state and city law claims, these objections are moot and otherwise overruled. See infra Part III.D.

Determining that Plaintiff had alleged hostile work environment claims under the NYSHRL and NYCHRL, Judge Bloom recommends that the court find that these claims are not jurisdictionally barred under those statutes' election of remedies provisions to the extent they allege discrimination on the basis of Klaper's age and Polish national origin.[14] (R&R at 20-21.) CHC objects to both findings. (CHC Obj. at 6-10.) However, because the court declines to exercise jurisdiction over Plaintiff's pendent state and city law claims to the extent any facet of those claims are not already jurisdictionally barred, see infra Part III.D, the court need not pass upon either Judge Bloom's recommendation or CHC's objection.

Similarly, CHC asserts that Judge Bloom erred by not recommending that summary judgment be granted on Plaintiff's disability-based NYSHRL claims. (CHC Obj. at 10-11.) However, consistent with its decision in Klaper I,[15] the court finds that the NYSHRL's election of remedies provision bars it from exercising jurisdiction over any disability discrimination claim asserted under the NYSHRL that is predicated on Plaintiff's alcoholism. That claim was the subject of Klaper's prior NYSDHR complaint and no exception to the jurisdictional bar applies. (See R&R at 19-20 & n.16; see also Ex. X (Dkt. 83-8) (sealed) (NYSDHR Report and Determination); Dkt. 25-2 (NYSDHR Complaint Form).) Unlike § 1367(c), the election of remedies bar is not discretionary, and the court may not pass upon the merits of a claim over

---

[14] Both the NYSHRL and NYCHRL contain an election of remedies provision that bars this court from exercising jurisdiction over any claim previously filed as part of an NYSDHR complaint. See N.Y. Exec. Law § 297(9); N.Y. City Admin. Code § 8-502(a); see also York v. Ass'n of the Bar, 286 F.3d 122, 127 (2d Cir. 2002) (stating that under NYSHRL and NYCHRL claims "once brought before the NYSHDR, may not be brought again as a plenary action in another court"). The election of remedies bar is "jurisdictional," such that a federal court is deprived of jurisdiction over any claim subject to the provision. Moodie v. Fed. Reserve Bank, 58 F.3d 879, 882-83 (2d Cir. 1995) ("Both the language of the statute and its consistent judicial interpretation establish that § 297(9) poses an insuperable jurisdictional bar to the advancement of [subject] state law claims . . . .").

[15] In Klaper I, the court concluded that it lacked jurisdiction over Plaintiff's NYSHRL and NYCHRL claims against Local 74 under the statutes' respective election of remedies provisions. (Klaper I at *26-27.)

23

which it does not have jurisdiction. See Moodie, 58 F.3d at 882; Angrisani v. Long Isl. R.R., No. 01-CV-8453 (JF), 2005 WL 1311798, at *5-6 & n.8.

Therefore, whether through the operation of the election of remedies provisions' jurisdictional bar or the court's discretionary decision herein not to exercise jurisdiction over Plaintiff's pendent state and city law claims, CHC's objections to the R&R regarding the NYSHRL and NYCHRL are moot and accordingly overruled.

### D.    Supplemental Jurisdiction Over NYSHRL and NYCHRL Claims

Both parties object to Judge Bloom's final recommendation that the court should decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. (R&R at 21-22; see also Am. Compl. ¶¶ 156-161.) Noting that discovery in this matter is closed, Plaintiff argues that the court should exercise its discretion to retain jurisdiction over the NYSHRL and NYCHRL claims rather than force him to refile in state court. (Pl. Obj. at 18-19.) CHC effectively agrees, but instead argues that the court should retain jurisdiction for purposes of granting summary judgment in its favor with respect to Plaintiff's state and city law claims. (CHC Obj. at 10-11.)

Pursuant to 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Dismissal of the state law claims, however, is not "absolutely mandatory," and the authority whether to retain or decline jurisdiction over pendent state law claims resides in the sound discretion of the court. See Marcus v. AT&T Co., 138 F.3d 46, 57 (2d Cir.1998); Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).

Having determined that Plaintiff's federal claims do not survive summary judgment, the court declines to exercise supplemental jurisdiction over the remaining state and city law claims. See N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109, 118-19 (2d Cir. 2007) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotation marks and citation omitted)); Levy ex rel. Levy v. Hustedt Chevrolet, No. 05-CV-4832 (DRH), 2008 WL 5273927, at *8 (E.D.N.Y. Dec. 17, 2008) (declining to exercise supplemental jurisdiction over NYSHRL claims after granting summary judgment on ADA claims). It is not apparent that any additional discovery would be required were NYSHRL and NYCHRL claims to be refiled in state court, or that any impediment remains to the parties expeditiously proceeding to trial in this matter. (R&R at 21-22.) See also Tishman v. Associated Press, No. 05-CV-4278 (GEL), 2007 WL 4145556, at *9 (S.D.N.Y. Nov. 19, 2007) ("While discovery has been completed and the instant case has proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if plaintiffs' pendent claims were brought in state court." (citation omitted)). Moreover, because N.Y. C.P.L.R. § 205 permits Plaintiff to refile the pendent claims within six months without regard to the original statute of limitations, he will not be prejudiced by their dismissal. (R&R at 21.) Tishman, 2007 WL 4145556, at *9. Finally, declining to exercise jurisdiction is particularly appropriate where, as here, the remaining state and city law claims raise issues of fact and law that were not implicated in the course of the court's consideration of Plaintiff's ADA claims.

Accordingly, the court concurs in the R&R's recommendation that the court dismiss Plaintiff's pendent NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(c)(4).

## IV. CONCLUSION

For the reasons set forth above, and finding no clear error in those sections of the R&R to which no party objected, see Porter v. Potter, 219 F. App'x 112 (2d Cir. 2007), the R&R is ADOPTED in part and REJECTED in part.[16] Defendant's motion for summary judgment is GRANTED as to Plaintiff's ADA claims (Claim 1), as well as to those claims to which the motion was unopposed (Claims 2, 3, 4, 7, 8, and 9). Plaintiff's pendent NYSHRL and NYCHRL claims (Claims 5 and 6) are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(4).

The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
 March 21, 2014

NICHOLAS G. GARAUFIS
United States District Judge

---

[16] Specifically, as discussed above, supra Part III.C.2, the court does not adopt Judge Bloom's recommendation concerning the existence and justiciability of Plaintiff's hostile work environment claims under state and city law, as they are dismissed for lack of subject matter jurisdiction regardless. (See R&R at 19-21.)